AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
AUG 31 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. **18MJ4729**
Dell Laptop computer; Toshiba hard drive; Black )
SanDisk 4GB thumb drive; Seagate Barracuda HD )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein)

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2423(c) | Illicit Sexual Conduct in a Foreign Place |

The application is based on these facts:

See Affidavit of SA Bonnie Myers, Homeland Security Investigations (incorporated herein).

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bonnie Myers, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/31/18

City and state: San Diego, California

*Judge's signature*

Honorable Clinton Averitte, U.S. Magistrate Judge
**BARBARA L. MAJOR**
**U.S. MAGISTRATE JUDGE**

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Bonnie Myers, Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant to search the following electronic media, located in the Southern District of California, as further described in Attachment A, and seize evidence of crimes, specifically, violation of Title 18, United States Code, Section 2423(c), as more particularly described in Attachment B:

   a. Dell laptop computer, model PP39L, and serial number D6QOXK1 (**Target Device 1**);
   b. Toshiba hard drive with serial number X9MJT9KJTES6 (**Target Device 2**);
   c. Black SanDisk 4GB thumb drive (**Target Device 3**); and
   d. Seagate Barracuda hard drive (2 TB) with serial number W240FHM3 (**Target Device 4**)

collectively called **Target Devices**. This search supports an investigation by HSI into Norman P. Felts, who is charged in a Fifth Superseding Indictment in Case 13CR2296-JAH with the crime of Illicit Sexual Conduct in a Foreign Place, in violation of 18 U.S.C. § 2423(c) and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4). A factual explanation supporting probable cause follows.

2. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crime, as described in Attachment B.

3. The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this

1

affidavit is submitted for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not set forth each and every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

4. I am a Special Agent with HSI since January 2010. I am currently assigned to the Special Agent in Charge San Diego Office, Child Exploitation group within HSI. Prior to this time, I worked as a United States Border Patrol Agent in El Centro and San Diego, California for approximately six years and four months. I have a Bachelor's Degree in Criminology from Ohio University and a Master's Degree in Criminal Justice from Boston University. I have received training from the Federal Law Enforcement Training Center in the area of child pornography investigations and pedophile behavior. I have assisted in the service of numerous search warrants involving computer/cybercrimes. I received basic training from HSI regarding cybercrime investigations. I am currently assigned to the Internet Crimes Against Children task force in San Diego, California. This task force includes members of the San Diego Police Department, San Diego County Sheriff's Department, U.S. Postal Inspection Service, Federal Bureau of Investigations, Naval Criminal Investigative Service, U.S. Attorney's Office and the San Diego County District Attorney's Office. As an HSI Special Agent assigned to the ICAC task force, I investigate criminal violations relating to child exploitation and child pornography.

## FACTS IN SUPPORT OF PROBABLE CAUSE

**A.  Felts is Traveling in Foreign Commerce.**

5. For offenses committed before March 7, 2013, section 2423(c) requires proof that (1) the defendant is a United States citizen; (2) that he was traveling in foreign commerce; and (3) while the defendant was traveling in foreign

2

commerce in a foreign place, he engaged in illicit sexual conduct with another person. A U.S. citizen is "traveling in foreign commerce" while he moves from a place within the United States to a place outside the United States and for the period he is in the foreign country, so long as the stay in the foreign country is expected to end, is temporary, or contemplates some future departure. A stay in the foreign country need not be short or have a set end date, but it must be expected to end. Illicit sexual conduct can be sexual abuse of a minor, as defined in 18 U.S.C. § 2243(a) (namely sexual acts with a minor between 12 and 16 years of age by an offender more than 4 years older) or a commercial sex act with a minor under 18. For offenses committed on or after March 7, 2013, section 2423(c) requires proof that (1) the defendant is a United States citizen; (2) that he was traveling in foreign commerce or residing (temporarily or permanently) in a foreign place; and (3) while the defendant was traveling in foreign commerce or residing in a foreign place, he engaged in illicit sexual conduct with another person.

6. Norman Felts is a United States citizen, born in 1944 in Marietta, Georgia.

7. Until approximately December 2009, Felts lived in the United States. He sustained criminal convictions that require him to register as a sex offender with California state authorities. Felts was convicted in 1972 of Cal. Penal Code § 288a (oral copulation); in 1977 in Georgia of Penal Code § 16-6-4(b)(1) (child molestation); and 1999 of Cal. Penal Code § 266j (procurement of a child under age 16 for lewd or lascivious acts). He registered with law enforcement authorities through November 2009 with residences in Southern California. On November 5, 2009, Felts submitted a "change of address" form with registration authorities, indicating that he was living on his boat in Ensenada, Mexico. On December 20, 2010, Felts re-registered with authorities in San Diego, indicating that he was a "transient" at 3600 West Harbor in San Diego and that he had "moved" "into

3

jurisdiction." On January 6, 2011, Felts submitted another update with registration authorities, stating he had moved "out of state" and identifying his residence as the Cruiseport Village in Ensenada, Mexico. In February 2013, Felts submitted a change of address form, indicating he had moved to Wilmington, California. On May 8, 2013, Felts indicated he had moved "out of state" and that he was living in Mexico, once again.

8. A contract from the Cruiseport Village Marina in Ensenada, Mexico indicates Felts docked his boat in Ensenada, Mexico from January 2010 to January 2013. He moved the boat to California on or about February 1, 2013 and entered into a contract with a third party vendor to have the vendor attempt to sell the boat.

9. Felts secured an apartment in Ensenada, Mexico on or about the time Felts left the Cruiseport Village Marina at the end of January 2013.

10. Felts repeatedly traveled from Mexico back to the United States between January 2010 and June 2013, crossing through a port of entry over 90 times. He crossed at least once a month, though generally more frequently.

11. Felts maintained ties to the United States. For example,

    a. Felts applied for a replacement passport with the Department of State in December 2009. His application listed a permanent residence in Long Beach, California. Felts also indicated that he intended to travel on December 15, 2009 to Ensenada, Mexico for "6 months."

    b. Felts registered his boat with the United States Coast Guard in February 2010 and again in June 2013.

    c. Felts registered his truck with South Dakota's Department of Motor Vehicles in June 2011. In the registration, Felts declared that he did not maintain a residence post office address (defined as the place where the declarant actually lives) in South Dakota or any other United States

4

jurisdiction. But he maintained his truck's registration with United States authorities.

    d.    Felts repeatedly returned to the United States for medical treatment at the VA hospital in the San Diego area. In December 2009, Felts reported that he "plans on sailing around the world for 1 year---leaving in about 5 months." In January 2010, he reported that he was "planning to move to Mexico" and that he "resides in Ensenada." The medical records generally contain similar statements from Felts for the 2010-2013-time frame. But because of various medical issues, Felts was seen at the VA hospital almost every month (sometimes more than once a month) between 2010 and 2013. Felts received instructions at the end of many appointments to follow up or to return to the clinic within a set time-frame.

12.    Immigration authorities in Mexico report that Mr. Felts has never begun the process of becoming an official resident of Mexico.

**B.    Illicit Sexual Conduct in Mexico**

13.    In November 2012, the National Center for Missing and Exploited Children received a tip that Norman Felts was sexually abusing a minor (MV) in Ensenada, Mexico. The tipster reported that Felts had a local 16-year-old boy work on his boat for a couple hours per day, but that they would then descend into the cabin of the boat for 5-6 hours. Based on the tip, Mexican authorities interviewed potential witnesses, Felts, and MV in December 2012 and January 2013. During those initial interviews, Felts stated that MV worked on his boat, but that no sexual abuse occurred. MV also denied abuse. He stated that he simply worked on Felts' boat and that he was paid for cleaning, painting and varnishing the boat.

14.    In approximately July 2013, MV disclosed abuse to Mexican authorities. MV stated that Felts sexually abused him starting in approximately 2010 when he was 13 years of age. MV stated that Felts orally copulated him and

5

vice versa, that Felts touched his nude penis, and that Felts penetrated MV's anus with his penis. MV was forensically interviewed in the United States and provided grand jury testimony disclosing sexual abuse, as well.[1] MV stated that Felts abused him at least once a week and that the last sexual act occurred at the end of May 2013 in Felts' apartment. MV stated he was paid for the sexual acts. MV's mother stated that MV never disclosed abuse until July 2013, when she learned of MV's abuse for the first time.

15. At the end of May 2013, Felts crossed from Mexico into the United States at the Tecate Port of Entry. He had a Dell laptop computer, model PP39L, and serial number D6QOXK1 (**Target Device 1**) and a Toshiba hard drive with serial number X9MJT9KJTES6 (**Target Device 2**) in a bag in his vehicle. Those devices were seized and ultimately searched for evidence of child pornography offenses pursuant to a search warrant between June and September 2013. The

---

[1] Felts has indicated in jail calls and letters and previewed his defense at the first trial that MV's disclosures contain material inconsistencies that call MV's credibility into account. During the disclosures, MV provided some details in some interviews that he omitted in others. But the underlying claim of abuse remained consistent among the interviews in July 2013. MV subsequently met with law enforcement on other occasions and remained consistent about suffering abuse, though he provided some details in some interviews that were omitted in others. MV testified at trial on July 9, 2018, disclosing abuse.

Felts has also indicated that he will attempt to impeach MV on at least two grounds. First, that MV received payment (statutorily mandated witness fees) for his grand jury testimony, which Felts contends provided MV with an incentive to testify favorably for the government. Second, that MV was accused of raping his minor cousin in Mexico. According to Felts, MV would have told authorities what they wanted to hear about Felts to avoid prosecution for the rape allegations. Mexican authorities explained that a teacher reported the cousin's possible abuse in November 2013. Mexican authorities thereafter interviewed MV in January 2014, who denied the allegations, and Mexican authorities closed the investigation in January 2017, once the statute of limitations lapsed.

devices were also reviewed pursuant to court authorization between January and March 2018 and again in August 2018. The original output disc for the search of the laptop (**Target Device 1**) revealed dozens of non-sexually explicit photographs of MV in folders titled with his name. The forensic search also revealed three images of MV on Felts' boat, sitting with an exposed penis. Those photographs were seized from a backup of the operating system on the laptop that contained a thumbs.db database file.[2] MV later disclosed that Felts took those photographs.

A forensic analysis of the loose hard drive (**Target Device 2**)—which Felts stated was corrupted and not working—also revealed dozens of non-sexually explicit photographs of MV saved in folders titled with his name. Sexually explicit images of MV were contained in a thumbs.db database file on the hard drive, that were identical to the images found on the laptop.[3] The internet artifacts also contain evidence of internet searches involving the terms teen and young. Between January and March 2018, the computer forensic agent conducted another search of the duplicate digital image created from the loose hard drive. That search revealed five word documents created between December 2012 and January 26, 2013, which contain MV's name in the title: "MV Final Instructions," "MV Investigation 2," "MV Investigation," "MV Lecture II," and "MV Lecture." They are Spanish-language documents containing admissions (as translated) like "When we started having sexual relations, you did it for pleasure and enjoyment. Now, you want money"; "We know that you are going to give me good kisses because I can buy you. We know you are going to suck my cock because I can buy you. We know that

---

[2] Thumbs.db database images are not viewable in the database without a viewer configured to show the .db images. The laptop did not contain forensic evidence of a thumbs.db viewer.

[3] The hard drive did not contain forensic evidence of a thumbs.db viewer, either.

you are going to eat sperm because you said that you would eat my friend's sperm, if you paid for sex. We know you are going to do all sexual if the price is right, but you don't do those things for me for love or because you want to please me."

16. Mexican authorities seized a desktop computer and two cameras in Mexico in connection with their investigation into Norman Felts. Those devices were imaged by HSI authorities and the duplicate digital images were put on a Seagate Barracuda hard drive (2 TB) with serial number W240FHM3 (**Target Device 4**). One of the cameras, a Fujifilm FinePix, matched the make and model of the camera from the EXIF data for most of the photographs seized from the laptop that was seized in May 2013. A duplicate digital image was created from the SD Card for that camera in Mexico. A subsequent forensic analysis revealed in the unallocated clusters (meaning the photographs were deleted) 3 photographs of an exposed penis. MV stated that those were photographs of him on Felts' boat, which Felts took of MV. The forensic output disc for the desktop computer contained documents associated with Felts, including a letter titled "Homeland Security Letter." Felts had a copy of that letter on his person at the time of his arrest in June 2013. The computer contained user profiles for three others.

17. Felts was arrested on June 11, 2013 in San Diego, California. He voluntarily appeared at HSI's offices, believing he would be retrieving his laptop and hard drive. Instead, officers executed an arrest warrant. Among the items seized incident to Felts' arrest was a Black SanDisk 4GB thumb drive (**Target Device 3**). That device was searched pursuant to a search warrant and no child pornography was seized at the time.

18. Felts contends that he has a medical condition, peyronies disease, that makes it impossible for him to achieve an erection to sodomize MV. Medical records from the VA reflect that Felts sought treatment for erectile dysfunction beginning in October 2010. He reported that increasing doses of Viagra did not

work, tried a testosterone patch and cream, a vacuum pump device, and a "caverject" injection. The medical records show that he was diagnosed with peyronies disease, which led to a 40 degree curvature of his penis.[4] Other medical reports memorialize Felts' statements to medical providers, for example, that testosterone creams increased his libido and that he had "little difficulty" achieving and maintaining an erection. Medical records also show that "caverject injections" allowed Felts to achieve an 80% erection. During MV's interviews, he stated that Felts took pills and gave himself injections to achieve an erection. Felts also told a witness in Mexico that he went to the VA to obtain medications so he could achieve orgasms.

19. Norman Felts has pled not guilty to the offenses. He was tried on a § 2423(c) charge in July 2018. It ended in a mistrial a week after the trial began and the day after the Ninth Circuit issued *United States v. Pepe*, 895 F.3d 679 (9th Cir. 2018). *Pepe* overturned prior case law defining the element "traveling in foreign commerce." During the trial, Felts claimed that MV was a liar, that he had financial motivation to accuse Felts, and that the forensic data retrieved from his devices was the product of improper "digital hygiene." Felts claimed that the forensic analyst must have contaminated the forensic results of Felts' media with the forensic results of the search of Felts' known associate, Vaughn Rees. A retrial is scheduled to begin on the possession charge on February 5, 2018.

**Procedures for Electronically Stored Information
as to the Computer and Other Electronic Storage Devices**

20. With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding the **Target Devices**:

---

[4] Felts has noticed an expert for trial, who opines that Felts would have had difficulty achieving an erection that could penetrate a rectum.

9

### Identification and Extraction of Relevant Data

a. A forensic image is an exact physical copy of the hard drive or other media. Computer forensic analysts have already obtained a forensic image of the **Target Devices**. Using the forensic images, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that may be commercially purchased, installed and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment may be significantly different with respect to configuration, including permissions and access rights, passwords, data storage and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

b. Analyzing the contents of a computer or other electronic storage device, even without significant technical issues, may be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue: who created it; when and how it was created or downloaded or copied; when it was last accessed; when it was last modified; when it was last printed; and, when it was deleted. Sometimes it is possible to recover an entire document that never was saved to the hard drive if the document was printed. Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications do not store data as

10

searchable text. The data is saved in a proprietary non-text format. Documents printed by the computer, even if the document never was saved to the hard drive, are recoverable by forensic programs but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

   c.  It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users which generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an

incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

    d.    Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For example, a single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

    e.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as a known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days from the date of seizure pursuant to this warrant, absent further application to this court.

12

f. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## GENUINE RISKS OF DESTRUCTION OF DATA

21. In this case, there is no genuine risk of destruction of evidence as the property to be searched is already in the custody of law enforcement personnel.

## PRIOR ATTEMPTS TO OBTAIN DATA

22. As described above, the United States previously secured search warrants to examine all of the **Target Devices**. At the time, the warrants focused either on child pornography offenses or on the § 2423(c) offense without the new definition of "traveling in foreign commerce." The extension orders allowing the computer forensic agents to forensically examine the media also focused on evidence of child pornography offenses. In light of *Pepe*, and probable cause to believe that the **Target Devices** contain evidence that Felts's trips to Mexico were "expected to end, is temporary, or contemplates some future departure,"[5] the United States seeks this search warrant to re-analyze the **Target Devices** for such evidence.

## CONCLUSION

23. Based on the foregoing, I respectfully submit that there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of

---

[5] Felts maintained substantial documents, photographs, and other artifacts that appear from their titles to relate to his sail boat, internet searches about trips abroad, residency requirements for Mexico, medical appointments, and registration of his vehicles. In addition, Felts possessed **Target Device 3** at the time of his arrest, after his laptop and hard drive were seized. During the initial search of that thumb drive, no child pornography was identified. But given Felts' transient status in June 2013, and his frequent travels, it is probable that the thumb drive contained evidence of his travels to Mexico. The computer forensic agent recalls seeing some documents on the hard drive during the initial search, but cannot recall the contents of them.

violations of federal criminal law, namely, Title 18, United States Code, Sections 2423(c), as described in Attachment B, will be found in the **Target Devices**, as described in Attachment A.

24. I therefore respectfully request that this Court issue a warrant authorizing me, an HSI Special Agent, or another law enforcement officer, to search the **Target Devices**, as described in Attachment A, and seize the items listed in Attachments B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Bonnie L. Myers
Special Agent
Homeland Security Investigations

Subscribed and sworn before me this ___3/___ day of August, 2018.

HONORABLE CLINTON AVERITTE
United States Magistrate Judge

14

# ATTACHMENT A
## ITEMS TO BE SEARCHED

- Dell laptop computer, model PP39L, and serial number D6QOXK1

- Toshiba hard drive with serial number X9MJT9KJTES6

- Black SanDisk 4GB thumb drive

- Seagate Barracuda hard drive (2 TB) with serial number W240FHM3

These items are secured at the HSI office located at 880 Front Street, Suite 3200, San Diego, CA 92037.

# ATTACHMENT B
# ITEMS TO BE SEIZED

Authorization is sought to search for and seize evidence that relates to the violation of Title 18, United States Code, Section 2423(c) (engaging in illicit sexual conduct in foreign places). This authorization includes the search of physical documents as well as electronic data to include deleted data, remnant data, and slack space. The seizure and search of computers and computer media, including the digital cameras, will be conducted in accordance with the "Procedures For Electronically Stored Information" provided in the affidavit submitted in support of this warrant. Items to be seized include the following:

a. All documents, including all temporary and permanent electronic files and records (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files), tending to show travel in foreign commerce (including trip planning, trip arrangements) and tending to show that the travel was "expected to end, is temporary, or contemplates some future departure" for the period between January 2010 and June 2013.

b. All documents, including all temporary and permanent electronic files and records (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files), tending to show residency or plans regarding residency for the period between January 2010 and June 2013.